UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x

EDWARD MONAGLE,

                      Plaintiff,

    -against-

SCHOLASTIC INC.,

                     Defendant.

---------------------------------------------------x

**06 CV 14342**

Civ.

**COMPLAINT**

JUDGE LYNCH

RECEIVED
DEC 1 2 2006
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff, Ed Monagle by his attorneys, Bantle & Levy LLP, alleges for his complaint against defendant as follows:

### NATURE OF THE ACTION

      1. This is an action for breach of contract and for violations of New York State Labor Law Section 190, <u>et</u>. <u>seq</u>. arising from defendant's wilful failure to pay wages due and owing to plaintiff. Plaintiff seeks monetary damages.

### JURISDICTION AND VENUE

      2. This suit is brought and jurisdiction lies based on diversity of citizenship pursuant to 28 U.S.C. §1132 and 1140. The parties are citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

      3. Venue is properly laid in this district pursuant to 28 U.S.C. §1391(a) because the defendant resides within the district of the United States District Court, Southern District of New York and because a substantial part of the unlawful acts and omissions giving rise to claims alleged herein were committed within the district of the United States District Court, Southern District of New York.

## PARTIES

4.  Plaintiff Edward Monagle ("Plaintiff") is a citizen of the United States and the State of New Jersey who currently resides at 190 Stonehenge Terrace, Clark, New Jersey 07066.

5.  Upon information and belief, defendant Scholastic Inc. ("Scholastic" or "Defendant"), is a domestic corporation formed and existing under the laws of the State of New York, with its principal place of business at 557 Broadway, New York, New York 10012.

## STATEMENT OF FACTS

6.  Plaintiff was employed by Scholastic commencing in or about January 1985.

7.  In or about 1997, plaintiff became Senior Vice President, Finance and Operations, Book Group.

8.  In this capacity, plaintiff's duties included management of all operational functions of Scholastic's Book Group, including without limitation, sales forecasting, inventory management, purchasing inventory.

9.  In this capacity, Plaintiff's duties also included management of Scholastic's Harry Potter franchise, strategic and operational input in Book Group acquisitions and management of the creation of web based informational systems for the Book Group.

10.  In or about July, 2004, Scholastic advised Plaintiff that he was being let go as part of a restructuring of the Finance and Operations Department.

11.  In December 2004, plaintiff entered into a written agreement setting forth the terms of plaintiff's separation from the Company (the "Separation Agreement").  (A true and correct copy of the Separation Agreement is annexed as Exhibit 1 hereto.)

2

12. Prior to executing the Separation Agreement, Plaintiff thoroughly reviewed the terms of the Agreement with Scholastic's then-Senior Vice President of Human Resources, Larry Holland, and with an attorney in Scholastic's General Counsel's office.

13. The Separation Agreement was executed by Plaintiff on December 8, 2004 and by Larry Holland on behalf of Scholastic on December 13, 2004.

14. At the time of execution of the Separation Agreement, Plaintiff's annual salary was Four Hundred Twenty Two Thousand Dollars ($422,000.00).

15. Pursuant to the express terms of paragraph 1 of the Separation Agreement, plaintiff was deemed to have resigned his position as Senior Vice President effective December 31, 2004 and was retained as an employee of Scholastic from January 1, 2005 through June 30, 2006 (the "Employment Period").

16. Pursuant to the express terms of paragraph 2 of the Separation Agreement, Scholastic was obligated to, inter alia, "pay [Plaintiff] twenty-four (24) months severance" following the conclusion of the Employment Period.

17. Payment of severance under the Separation Agreement was to be made in a manner consistent with Plaintiff's preference, including in a lump sum payment if so requested by Plaintiff.

18. The severance payment (and certain other benefits conferred to Plaintiff) set forth in paragraph 2 of the Separation Agreement was to be provided to Plaintiff in exchange for certain consideration set forth in the Separation Agreement, including without limitation, a general release of claims (paragraph 4), a covenant not to sue (paragraph 5), a covenant not to disparage the Company (paragraph 6) and a covenant to cooperate with the Company in the event

3

of certain investigations, administrative proceedings or litigations related to any matter that occurred during Plaintiff's employment with Scholastic.

19.  In or about July, 2006, Scholastic made a partial severance payment to Plaintiff in the amount of Two Hundred Eleven Thousand Dollars ($211,000.00), less withholdings, an amount equal to six (6) months of the severance due and owing pursuant to the Separation Agreement.

20.  Shortly after receiving this severance payment, Plaintiff contacted Scholastic and questioned the Company as to why he had received only a partial payment of the severance due, rather than payment of the entire twenty-four months set forth in the Separation Agreement.

21.  Scholastic advised Plaintiff that is considered its payment of six months severance pay to be in full satisfaction of its obligations to pay severance pursuant to the Separation Agreement.

22.  Plaintiff contested this assertion by Scholastic, referring Scholastic to the express terms of the Separation Agreement.

23.  Thereafter, Plaintiff duly requested that Scholastic pay him the remaining eighteen (18) months severance (the "Remaining Severance Owed") to which he is entitled under the clear and unambiguous terms of the Separation Agreement, an amount equal to Six Hundred Thousand Thirty Three Thousand Dollars ($633,000.00).

24.  Notwithstanding Plaintiff's clear entitlement to a lump sum payment of the Remaining Severance Owed, Scholastic refused to make payment of the Remaining Severance Owed and advised Plaintiff that the Company believed that it had satisfied its obligation to pay Plaintiff severance notwithstanding the express terms of the Separation Agreement.

4

25.  By letter hand delivered to Scholastic on or about October 10, 2006, Plaintiff, acting through counsel, expressly demanded that Scholastic comply with the clear terms of the Separation Agreement and make payment to him of the Remaining Severance Owed in a lump sum by no later than Friday, October 20, 2006.

26.  Despite plaintiff's written and oral demands for payment, and the clear and unambiguous terms of the Separation Agreement, Scholastic has failed to make payment of the Remaining Severance Owed.

27. Scholastic's failure to make payment to Plaintiff of the Remaining Severance Owed is wilful and intentional.

## COUNT I

28.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 27.

29.  In failing to pay Plaintiff the Remaining Severance Owed, Scholastic has breached it's the clear and unambiguous terms of its contract with Plaintiff.

30.  As a result of Scholastic's breach, Plaintiff has suffered monetary damages in the amount of $633,000, plus applicable statutory interest.

## COUNT II

31.  Plaintiff repeats and realleges the allegations in paragraphs 1 through 30.

32.  Scholastic has failed to pay plaintiff severance pay due and owing in the amount of $633,000.

33.  Scholastic's failure to pay plaintiff severance pay due and owing is wilful and intentional.

34. Scholastic's failure to pay plaintiff severance pay due and owing violates New York Labor Law Section 190 et. seq.

35. As a result of Scholastic's wilful refusal and failure to pay Plaintiff severance pay due and owing, Plaintiff is entitled, pursuant to New York Labor Law Section 190 et. seq., to liquidated damages in the amount of 25% of the unpaid separation pay, plus interest.

36. As a result of Scholastic's willful refusal and failure to pay Plaintiff severance pay, Plaintiff is entitled, pursuant to New York Labor Law Section 190 et. seq., to his costs and attorneys' fees in this action.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant judgment for plaintiff and that it order and award plaintiff the following relief against defendant:

(a) damages on Plaintiff's breach of contract claim in the amount of $633,000, plus applicable statutory interest;

(b) damages on Plaintiff's New York State Labor Law (Section 190 et. seq.) claim in the amount of $633,000, plus liquidated damages in the amount of $158,250 and statutory attorneys' fees incurred in this action;

6

(c) the costs of this action; and

(d) such other and further relief as the Court may deem just and reasonable.

Dated: New York, New York
       December 11, 2006

BANTLE & LEVY LLP

By:             
      Robert L. Levy (RL-1633)
817 Broadway
New York, New York 10003
212.228.9666
Attorneys for Plaintiff

## AGREEMENT AND GENERAL RELEASE

Agreement and General Release ("Agreement"), by and between Edward Monagle ("Employee" or "you") who resides at 190 Stonehenge Terrace, Clark, NJ 07066, and Scholastic Inc. (the "Company").

1.　　You acknowledge that effective December 31, 2004 (the "Resignation Date"), you shall resign your status as an officer of Scholastic Inc. and your position as Senior Vice President, Finance & Operations, Book Group.　After the Resignation Date you shall not represent yourself as being an officer of the Company for any purpose.　Following the Resignation Date, you shall continue your employment with the Company as an internal consultant for a period of eighteen (18) months from the Resignation Date (the "Employment Period").　Your title shall be Internal Consultant and you shall report directly to Mary Winston, Chief Financial Officer.　On the last day of the month of the aforementioned Employment Period, you shall retire from the Company and your employment shall terminate, including for purposes of participation in and coverage under all benefit plans and programs sponsored by or through the Company Entities (as herein defined), except for those benefits to which you are entitled based on your length of service or status as a retiree.　You acknowledge and agree that the Company Entities shall have no obligation to rehire you, or to consider you for employment, after the conclusion of the afore-mentioned Employment Period.　You further warrant and represent that you will not seek employment with any of the Company Entities at any time in the future.　You acknowledge that the representations in this paragraph constitute a material inducement for the Company to provide the payment(s) to you pursuant to paragraph 2 of this Agreement.

2.　　Following the Effective Date of this Agreement and in exchange for your waiver of claims against the Company Entities and compliance with other terms and conditions of this Agreement, the Company agrees as set forth below:

(a)　　To pay you twenty-four (24) months severance, following the Employment Period with the Company.　This payment will be made to you in equal biweekly installments or a lump sum, which ever you prefer, subject to income tax withholding and other applicable payroll deductions, paid in accordance with the Company's normal payroll practices.

(b)　　To continue to pay the cost of medical benefit coverage during the afore-mentioned Employment Period to the same extent as prior to the Resignation Date, with Employee to pay an amount equal to the then current employee share of the cost of such coverage under the Company's group medical plan.

(c)　　That you will continue to be eligible for the Company 401K plan, pension plan, MSPP and flexible spending plan during the afore-mentioned Employment Period.

(d)　　To provide you with outplacement assistance at the Company's cost for up to one (1) year through Lee Hect, which assistance can begin following the Resignation Date.

3.　　You acknowledge and agree that the payments and other benefits provided pursuant to this Agreement: (i) are in full discharge of any and all liabilities and obligations of

x:\Linda\Agreements\Monagle

1

the Company to you, monetarily or with respect to employee benefits or otherwise, including but not limited to any and all obligations arising under any alleged written or oral employment agreement, policy, plan or procedure of the Company and/or any alleged understanding or arrangement between you and the Company; and (ii) exceed any payment, benefit, or other thing of value to which you might otherwise be entitled under any policy, plan or procedure of the Company and/or any agreement between you and the Company.

    4.    (a)    In consideration for the payments and benefits to be provided you pursuant to paragraph 2 above, you, for yourself and for your heirs, executors, administrators, trustees, legal representatives and assigns (hereinafter referred to collectively as "Releasors"), forever release and discharge the Company and its past, present and future parent entities, subsidiaries, divisions, affiliates and related business entities, successors and assigns, assets, employee benefit plans or funds, and any of its or their respective past, present and/or future directors, officers, fiduciaries, agents, trustees, administrators, employees and assigns, whether acting on behalf of the Company or in their individual capacities (collectively the "Company Entities") from any and all claims, demands, causes of action, fees and liabilities of any kind whatsoever, whether known or unknown, which you ever had, now have, or may have against any of the Company Entities arising from your employment by reason of any act, omission, transaction, practice, plan, policy, procedure, conduct, occurrence, or other matter up to and including the date on which you sign this Agreement.

    (b)    Without limiting the generality of the foregoing, this Agreement is intended to and shall release the Company Entities from any and all claims, whether known or unknown, which Releasors ever had, now have, or may have against the Companies Entities arising out of your employment and/or your separation from that employment, including, but not limited to: (i) any claim under the Age Discrimination in Employment Act, as amended, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974 (excluding claims for accrued, vested benefits under any employee benefit or pension plan of the Company Entities subject to the terms and conditions of such plan and applicable law), and the Family and Medical Leave Act; (ii) any claim under the New York State Human Rights Law, and New York City Administrative Code and the New York State Constitution; (iii) any other claim (whether based on federal, state, or local law, statutory or decisional) relating to or arising out of your employment, the terms and conditions of such employment, the termination of such employment, and/or any of the events relating directly or indirectly to or surrounding the termination of that employment, including but not limited to breach of contract (express or implied), wrongful discharge, detrimental reliance, defamation, emotional distress or compensatory or punitive damages; and (iv) any claim for attorneys' fees, costs, disbursements and/or the like. Nothing in this Agreement shall be a waiver of claims that may arise after the date on which you sign this Agreement or a claim for workers compensation.

    (c)    In consideration for the obligations undertaken in this Agreement, the Company Entities (hereinafter referred to collectively as "Releasors"), forever release and discharge you and your heirs, executors, administrators, trustees, legal representatives and assigns from any and all claims, demands, causes of action, fees and liabilities of any kind whatsoever, whether known or unknown, which it ever had, now have, or may have against you arising from your employment by reason of any act, omission, transaction, practice, plan, policy,

procedure, conduct, occurrence, or other matter up to and including the date on which this Agreement is signed.

5.    You represent and warrant that you have not commenced, maintained, prosecuted or participated in any action, suit, charge, grievance, complaint or proceeding of any kind against Company Entities in any court or before any administrative or investigative body or agency and/or that you are hereby withdrawing with prejudice any such complaints, charges, or actions that you may have filed against Company Entities. You further acknowledge and agree that by virtue of the foregoing, you have waived all relief available to you (including without limitation, monetary damages, equitable relief and reinstatement) under any of the claims and/or causes of action waived in paragraph 4(a) and (b) above.

6.    (a)    You agree that you will not disparage or encourage or induce others to disparage any of the Company Entities. For the purposes of this Agreement, the term "disparage" includes, without limitation, comments or statements to the press and/or media, the Company Entities or any individual or entity with whom any of the Company Entities has a business relationship which would adversely affect in any manner (i) the conduct of the business of any of the Company Entities (including, without limitation, any business plans or prospects) or (ii) the business reputation of the Company Entities.

7.    (a)    You agree that you will make yourself reasonably available to cooperate with the Company and/or the Company Entities and its or their respective counsel in connection with any investigation, administrative proceeding or litigation relating to any matter that occurred during your employment in which you were involved or of which you have knowledge. If applicable, the Company shall pay your expenses in connection with this provision.

(b)    You agree that, in the event you are subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony (in a deposition, court proceeding or otherwise) which in any way relates to your employment by the Company and/or the Company Entities, you will give prompt notice of such request to Kenneth Rowe, Director, Human Resources (or his successor) at Scholastic Inc., 557 Broadway, New York, NY 10012 and will make no disclosure until the Company and/or the Company Entities have had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

8.    The terms and conditions of this Agreement are and shall be deemed to be confidential, and shall not be disclosed by you to any person or entity without the prior written consent of the Company, except if required by law, and to your accountants, attorneys, business advisors outside of the Company and/or spouse, provided that, to the maximum extent permitted by applicable law, rule, code or regulation, they agree to maintain the confidentiality of the Agreement. You further represent that you have not disclosed the terms and conditions of the Agreement to anyone other than your attorneys, accountants, business advisors outside of the Company and/or spouse.

9.    You acknowledge that during the course of your employment with the Company and/or any of the Company Entities, you have had access to information relating to the Company and/or the Company Entities and their respective business that is not generally known by persons

not employed by the Company and/or the Company Entities and that could not easily be determined or learned by someone outside of the Company and/or the Company Entities ("Confidential Information"). You agree not to disclose or use such Confidential Information at any time in the future.

10.     You represent that following your employment with the Company, you will return to the Company all property belonging to the Company and/or the Company Entities, including but not limited to laptop, cell phone, keys, card access to the building and office floors, phone card, rolodex (if provided by the Company and/or the Company Entities), computer user name and password, disks and/or voicemail code.

11.     (a)     During the Employment Period, you shall not enter into competition with the Company's Children's Trade Publishing business, provided however, that competition shall not include your employment by a non-competitive division or business unit of a company which is in competition with the Company's Children's Trade Publishing business, provided you are not involved with the division or business unit of such company that is in competition.

(b)     During the Employment Period, you shall not directly or indirectly solicit or induce any customer of the Company to terminate, or otherwise to cease, reduce, or diminish in any way its relationship with the Company.

(c)     During the Employment Period, you shall not recruit, solicit or induce any non-clerical employees of the Company to terminate their employment with, or otherwise cease their relationship with the Company, or hire or assist another person or entity to hire any then-current non-clerical employee of Scholastic.

(d)     You acknowledge that you have received adequate consideration for this non-competition/non-solicitation provision. You further acknowledge and agree that a breach of any of your obligations under Paragraphs 9 and 11 shall cause irreparable harm to the Company and that in any proceeding which may be brought by the Company to enforce any such obligations, temporary or permanent injunctive relief may be granted without the necessity of proof of actual damages or the requirement for the posting of security.

(e)     If at the time of enforcement of this Section a court holds that the restrictions stated herein are unreasonable under the circumstances then existing, the parties hereto agree that the maximum period or scope reasonable under such circumstances shall be substituted for the stated period or scope and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period and scope permitted by law.

12.     If any provision of this Agreement is held by a court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect; however, the remaining provisions shall be enforced to the maximum extent possible. Further, if a court should determine that any portion of this Agreement is overbroad or unreasonable, such provision shall be given effect to the maximum extent possible by narrowing or enforcing in part that aspect of the provision found overbroad or unreasonable. Additionally, you agree that if you breach the terms of paragraphs 5, 6, 7, 8, 9, 10 and/or 11, it shall constitute a material breach of this Agreement as to which the Company Entities may seek all relief available under the law.

x\Linda\Agreements\Monagle

13.     (a)     This Agreement is not intended, and shall not be construed, as an admission that any of the Company Entities has violated any federal, state or local law (statutory or decisional), ordinance or regulation, breached any contract or committed any wrong whatsoever against you.

(b)     Should any provision of this Agreement require interpretation or construction, it is agreed by the parties that the entity interpreting or constructing this Agreement shall not apply a presumption against one party by reason of the rule of construction that a document is to be construed more strictly against the party who prepared the document.

14.     This Agreement is binding upon, and shall inure to the benefit of, the parties and their respective heirs, executors, administrators, successors and assigns.

15.     This Agreement shall be construed and enforced in accordance with the laws of the State of New York without regard to the principles of conflicts of law.

16.     You understand that this Agreement constitutes the complete understanding between the Company and you, and supersedes any and all agreements, understandings, and discussions, whether written or oral, between you and any of the Company Entities.  No other promises or agreements shall be binding unless in writing and signed by both the Company and you after the Effective Date of this Agreement.

17.     You acknowledge that you: (a) have carefully read this Agreement in its entirety; (b) have had an opportunity to consider it for at least twenty-one (21) days the terms of this Agreement; (c) are hereby advised by the Company in writing to consult with an attorney of your choice in connection with this Agreement; (d) fully understand the significance of all of the terms and conditions of this Agreement and have discussed them with your independent legal counsel, or have had a reasonable opportunity to do so; (e) have had answered to your satisfaction by your independent legal counsel any questions you have asked with regard to the meaning and significance of any of the provisions of this Agreement; and (f) are signing this Agreement voluntarily and of your own free will and agree to abide by all the terms and conditions contained herein.

18.     You understand that you will have at least twenty-one (21) days from the date of receipt of this Agreement to consider the terms and conditions of this Agreement.  You may accept this Agreement by signing it and returning it to Kenneth Rowe, Director, Human Resources, at Scholastic Inc., 557 Broadway, New York, NY 10012.  After executing this Agreement, you shall have seven (7) days (the "Revocation Period") to revoke this Agreement by indicating your desire to do so in writing delivered to Kenneth Rowe at the address above (or by fax at (212) 343-6934) by no later than 5:00 p.m. on the seventh (7th) day after the date you sign this Agreement.  The effective date of this Agreement shall be the eighth (8th) day after you sign the Agreement (the "Effective Date").  If the last day of the Revocation Period falls on a Saturday, Sunday or holiday, the last day of the Revocation Period will be deemed to be the next business day.  In the event you do not accept this Agreement as set forth above, or in the event you revoke this Agreement during the Revocation Period, this Agreement, including but not limited to the obligation of the Company to provide the payments and other benefits referred to in paragraph 2 above, shall be deemed automatically null and void.

x:\Linda\Agreements\Monagle

5

Print Name: *Edward Monagle*  Date: *12/8/04*
Edward Monagle

Signature: *Edward Monagle*
Edward Monagle

STATE OF NEW YORK      )
                                              ss.:
COUNTY OF NEW YORK   )

On this *8th* day of *December* 2004, before me personally came Edward Monagle to me known and known to me to be the person described and who executed the foregoing Agreement, and he duly acknowledged to me that he executed the same.

*Annette M. Freda*
Notary Public

ANNETTE M. FREDA
NOTARY PUBLIC, State of New York
No. 24-4753047
Qualified in Kings County
Commission Expires Feb. 28, 2006

SCHOLASTIC INC.

By: *Larry Vitelli*
Larry Holland

Date: *12/17/04*

X:\Linda\Agreements\Monagle

6